**WOLF v DISPATCH PRINTING CO.**

Common Pleas Court, Franklin Co.

No. 155451. Decided July 9, 1941.

Irwin Wolf, Harry Kohn, Wilson & Rector, Columbus, for plaintiff.

Johnston & Peterson, Cowan & Adams, Columbus, for defendant.

## OPINION

By RANDALL, J.

The amended petition upon which the case was submitted to us consists of three causes of action, first, an action for reformation of an instrument, purporting to be a ninety-nine year lease; secondly, an action for judgment declaring said lease valid as reformed, and thirdly, an action for judgment for rentals alleged to be due under the terms of said lease. Inasmuch as proof was not submitted as to the issues joined on the third cause of action, a determination of that cause will be reserved for future determination.

The evidence submitted established the following facts: Plaintiff is the present owner of the fee simple title to certain real estate described in the petition by virtue of the provisions of the will of her husband, Isaac Wolf, now deceased. On the twenty-eighth day of September, 1923, plaintiff's predecessor in title executed and delivered to one George E. Fowler, his heirs, executors, administrators and assigns, a purported lease on the real estate in question for a period of ninety-nine years, renewable forever. Said lease provided for the payment of an annual rental of $1,600.00 in quarterly installments of $400.00 each. Said lease was in fact executed and delivered to the said George E. Fowler as agent for the defendant, The Dispatch Printing Company, said The Dispatch Printing Company being in truth and in fact the real

party in interest, as lessee. This lease was formally assigned by the said George E. Fowler to the defendant on the fourteenth day of December, 1923, and the defendant accepted said assignment and transfer, and assumed the liability and obligations of the said George E. Fowler under said lease, and agreed to punctually perform all of the same.

The plaintiff and her predecessor in title have performed up to the time of the filing of this action all the conditions, covenants and terms of said lease on the lessor's part to be performed. The defendant also fully performed all of the terms of said lease by it to be performed from the day of its execution until the first day of July, 1938, at which time it refused to further perform, upon the claim that said purported lease was invalid and without force and effect, because the notary public before whom the same was acknowledged did not certify the acknowledgment and subscribe his name thereto on the same sheet upon which the instrument was written. Since said date, the defendant has failed to perform said lease by the payment of the rentals therein required to be paid.

The instrument consists of sixteen typewritten sheets, consecutively numbered, under an ordinary manuscript cover. The pages are held together by two brass staples passing through punched holes through the several sheets and the manuscript cover. These staples may readily be removed by bending them and pushing them through the holes or apertures without any apparent injury to either the sheets or the instrument or the manuscript cover. In other words, other typewritten sheets of the same size could readily be substituted for any of the sheets making up said instrument. The operative provisions of said lease, including the testatum clause and the signatures of the lessors and the lessee appear on the first fifteen pages, and in addition thereto, these words appear at the bottom of page fifteen:

"State of Ohio, Franklin County, ss.: Be it remembered, that on this twenty-eighth day of September," and on the following page (16) continues these words, "A. D. 1923, before me, a notary public in and for said county and state, personally came the above named lessor, Isaac Wolf, and Hattie Wolf, his wife, and the above named lessee, George E. Fowler, to me personally known and by me known to be the persons signing the foregoing instrument, who acknowledged the signing of the same to be their free and voluntary act and deed for the uses and purposes therein mentioned. In witness whereof, I have hereunto subscribed my name and affixed my notarial seal on the day and year last above written.

"Willard Miller, notary public, Franklin county, Ohio. (Seal.)"

The evidence further shows that shortly after the execution of said instrument the defendant remodeled and made alterations in the building located on said premises, but no evidence was adduced to show the character of said alterations, or whether they actually increased the value of the property.

In the year 1932 and in the year 1936, the defendant requested the plaintiff to reduce the rentals called for in the lease. On each of these occasions, upon failure of the defendant to pay the rentals, action was instituted by the plaintiff, and after litigation, the defendant paid the rentals and the cases were dismissed. The evidence doesn't

show that any complaint was made at either of said times as to any defect in the execution of said lease.

In the year 1932, defendant gave notice to the plaintiff that it desired to purchase the fee simple title to the premises described in the lease for $30,000.00 pursuant to a purchase clause in the lease. An abstract was furnished and a deed of conveyance submitted and check drawn and placed in the hands of counsel for the defendant, but delivery of the deed was not accepted nor was the check delivered to the plaintiff. At said time, counsel for defendants attempted to deliver the key to said premises to one of counsel for the plaintiff, at which time, Mr. Johnston, of counsel for the defendant, delivered to counsel for the plaintiff a certain letter, marked Plaintiff's Exhibit No. 10, directed to Hattie R. Wolf, the plaintiff herein, advising her that the defendant was surrendering the premises described in the lease and the possession and custody thereof, in which letter was inserted the following paragraph: "It is the contention of the Dispatch Printing Company that said original lease was not executed according to law and is invalid and of no effect. The Dispatch Printing Company hereby disclaims all liability for rentals or otherwise under the terms of the said lease and/or the assignment thereof." It is fair to assume from the evidence that up to this time, defendant had not yet discovered the alleged defect in the acknowledgment of the instrument.

The evidence warrants the conclusion that the attempted symbolical delivery of possession by the attempt to turn ▮▮▮▮ ▮ over the key to said premises was not effective since counsel for plain-

tiff threw the key into the hallway in the presence of counsel for defendant and refused to accept delivery of same. Furthermore, there is doubt in our mind as to the authority of counsel for plaintiff to accept a surrender.

An examination of the instrument itself and a consideration of the manner in which the sheets are placed together convinces us that said instrument does not comply with the strict requirements of §8510 GC, since it can not be said that the notary certified the acknowledgment on the same sheet on which the instrument is written.

In the case of **Norman v Shepard, 38 Oh St 320**, cited by counsel for plaintiff, a part of the testatum clause, the signatures of the parties, the acknowledgment and the signature of the acknowledging officer all appeared upon the second page of the instrument, and without doubt, the testatum clause is a part of the lease. Therefore, even if we assume, as we might well do, from the meager report of the facts in the case of **Norman v Shepard,** that the fastenings of the mortgage involved in that case were similar to the fastenings in the case at bar, the cases would not be parallel since no part of the lease itself in the instant case appears on the sixteenth page of the same, which contains the form of acknowledgment and the signature of the acknowledging officer and his seal. As pointed out by the court in the case of **Norman v. Shepard,** there is no requirement of the statute that such an instrument be entirely upon one sheet of paper, accordingly, in the present case, if the sheets had been fastened together by eyelets, so that the same could not be removed without obvious mutilation of the pages, we could readily conclude that the sheets thus bound

together would constitute a single sheet and that there would be no defect in the acknowledgment of the instrument.

Assuming, therefore, in accordance with our conclusions, that there was a defect in the instrument in question, may we give the relief prayed for by the plaintiff by reforming the instrument or by giving legal effect to the same and declaring it a valid instrument? An answer to this question requires a consideration of decided cases in this state and §12210 GC.

At the outset, we find that at all times from the time of the execution of said instrument up to the twenty-ninth day of June, 1938, a period of fifteen years, the defendant treated same as a valid lease for ninety-nine years in accordance with its terms, and we further find that at the time of the execution of said instrument, both the plaintiff's predecessor in title and the defendant intended to enter into a valid and binding perpetual lease. Both of the parties were bound to know the provisions of §8510 GC, and we must assume and hold that each of them intended that the acknowledging officer's signature and the acknowledgment would be such as to comply with the law necessary to effect a valid and binding lease in furtherance of their intention. The evidence does not show by which of the parties the lease was prepared, and although it was necessarily delivered by the plaintiff to the defendant, the signatures of the original lessor and his wife, the present plaintiff, as well as the signature of the original lessee, were affixed before delivery of the instrument. Although the law does not require that a lessee sign and acknowledge an instrument of lease, the lessee did sign and acknowledge the instrument containing mutual covenants, and

in view of the then desire of both of the parties to execute an effective instrument, which would be binding upon both of them for all time, the facts warrant no other reasonable assumption than that the failure to perfect ▇▇▇▇▇ ▇ the acknowledgment of the instrument in accordance with §8510 was due to a mutual mistake.

Counsel for defendant contends that §12210 GC merely recognized a pre-existing rule of equity, and that such statute does not in any sense enlarge or extend the power of the court to afford relief in such a case.

**Section 12210** provides as follows:

"When in an instrument in writing or in a proceeding, there is an omission, defect or error by reason of the inadvertence of an officer or of a party, person or body corporate, whereby it is not in strict conformity with the laws of this state, the courts of this state may give full effect to said instrument or proceeding according to the true, manifest intention of the parties thereto."

In the case of **Warner v Callender, 20 Oh St 190,** the court invoked the statute to cure a defect where the seal had been omitted, and in the case of **Kilbourne v Fury, 26 Oh St 153,** to correct a defect in the execution of a deed where the acknowledging officer had failed to certify the separate examination of the wife.

In the early case of **Hout v Hout, 20 Oh St 119,** the Supreme Court laid down the principle, "That the above curative statutes are permissive and not mandatory and it still remains a question for the courts to determine under what circumstances and on what principles of equity they will give effect to an instrument or convey-

ance which is invalid in law. In that case, the court refused to grant relief under the statute to a grantee, where only a meritorious consideration passed, and in the course of the opinion, made this observation:

"The question then remains a question for the courts to determine what is 'just and equitable' between the parties. And what is just and equitable between the parties is best determined by a reference to the principles of equity jurisprudence, and those principles declare that a contract or conveyance invalid in law, shall not be enforced by a court of equity against a party equal in merit and in equity."

Counsel for the defendant in the instant case contends that the defect in the instrument in question was due to the negligence of the plaintiff and that plaintiff has no superior equities, and further, that although relief may be granted to a lessee, relief should not be granted to a lessor, except under special circumstances, since by restoring the property itself, he can be made whole. On the other hand, it is apparently the contention of the plaintiff that because of the course of dealing between the parties and the recognition of the instrument in question as a valid, perpetual lease, over a period of years, defendant should be estopped from now objecting to the exercise by the court of its power to correct the former defect if one exists.

Reference to some of the Ohio cases will demonstrate that there has been a constant clash between the policy of relieving against mistakes and of carrying out the intention of the parties on the one hand, and on the other hand the policy requiring compliance with express statutory provisions with reference to the execution of instruments. In other words, the question has been, shall the case be governed by a strict adherence to the ceremonial statutes on the one hand, or by the equity of a particular case on the other. The case of Fried v Cohn-Goodman Company, 28 O. L. R., 93, held that a lessor can get no relief in equity or under curative statutes against the lessee under a defectively executed lease, but suggested by way of obiter dictum that the lessor might have a remedy at law for damages.

In the case of Carlin Company v Burroughs Brothers, 7 OO 180, a few years later, the same court granted to the lessor the equitable remedy of reformation and declared that the same curative statutes were applicable, stating that it was a well settled rule that the lessor can not maintain an action for damages. In each of these cases which were in marked conflict, motions to certify to the Supreme Court were overruled.

The Supreme Court in the case of Wineburgh v Toledo Corporation, 125 Oh St 219, reversed the Court of Appeals in the case reported in 10 Ohio Law Abs, page 307, and refused to award damages upon the theory that the defective instrument operated as a contract. The court observed that to treat the defective instrument as a contract would tend "to nullify the statutory requirements relating to the execution of such instruments; for if a recovery can be had upon defective as well as upon valid instruments properly executed, then there would be no necessity of obeying the mandate of the statute. Under the theory adopted by the Court of Appeals, recovery could be had whether the statute was complied with or not, and §8510 GC, would be wholly ineffective in accomplishing its purpose."

It will be noted, however, that the concluding paragraph of the opinion in the same case is as follows:

"Whether reformation or other equitable remedy is available to the landlord under this or similar circumstances, it is not necessary to decide in this action, for that question is not here presented."

In the early case of **Richardson v Bates, 8 Oh St 257,** where an action was brought for rent under a defective lease, no prayer being made for reformation, the court held that the showing of a defect in the execution was a valid defense, and that the lease was of no binding obligation. In the course of the opinion, however, the court observed at page 264:

"The record shows that the plaintiff, by his petition, predicated his right to recover solely upon the indenture set forth in his petition. He did not aver a part performance, and ask to have the instrument reformed and then enforced. Nor does the petition state a delivery of possession by the plaintiff, or an occupancy by the defendants; but the right of action is placed solely upon the obligations imposed upon defendants by the instrument set forth."

Here the Supreme Court, as in the **Wineburgh case, supra,** left the inference by way of dictum that relief might have been granted in equity if it had been asked.

The Court of Appeals of Columbiana county in the case of S. S. **Kresge Company v B. D. K. Company, 52 Oh Ap 101,** held that:

"Where all of the lessors signed and acknowledged such fifty-year lease, but one of the lessors signed and acknowledged upon a sheet of paper firmly attached by musilage to the main body of the instrument and subsequently acknowledged the execution thereof and her acknowledgment is set forth on the main body of the instrument, the lease will be reformed so as to conform with the real intent of the parties."

It would seem that the court might well have held that there was no defect. That was a case where in a declaratory judgment action relief was granted to the lessor.

The Court of Appeals of Hamilton county, in the case of **Rollman & Sons Co. et al v The Alaska Realty Co. et al., 62 Oh Ap 166,** held that:

"**Section 8510 GC,** requiring an acknowledging officer to certify the acknowledgment of a lease on the same sheet of paper on which the instrument is written and subscribe his name thereto, is complied with where a lease is written on ten sheets of paper firmly bound together with rivets in such a manner as to prevent any tampering therewith without leaving definite evidence of alteration, the ninth sheet containing part of a sentence of the lease, followed by the signatures of the parties and witnesses and the beginning of the certificate of acknowledgment which is concluded on the tenth sheet which also contains the acknowledging officer's signature."

The court in a dictum said:

"Our position is reinforced also by the conclusion that even if it were necessary to declare the lease ineffective as such, it must under the facts presented be deemed to be a contract to make a lease."

554

In the case of R. K. O. Distributing Co. v Films Center Realty Co., 53 Oh Ap 438 .(Hamilton County Court of Appeals), the lessee asked for a declaratory judgment to the effect that a lease defective because of lack of witnesses created only a tenancy from year to year, and that it might terminate its liability by vacating at the end of the year. The lessor cross-petitioned for a declaration either that the lease is valid or in the alternative for specific performance of the preliminary agreement which preceded the making of the lease. In the opinion, the Court of Appeals repudiates the lessee's argument that the defective lease is not available as evidence of the contract and approved the decree of the trial court requiring the lessee to accept a properly executed lease.

It is difficult to see how the last two mentioned cases may be reconciled with the pronouncements of Judge Jones in the Wineburgh case, supra.

Counsel for each of the parties apparently rely upon the case of Kresge Co. v Butte et al., 136 Oh St., page 85, which arose in the Common Pleas Court of Jefferson county. In that case the term of the lease was thirty years; the plaintiff company, lessee, then had entered into possession and had been in possession for about six years, when it notified the defendants, lessors, that it considered the lease in questsion one from year to year, and that it would vacate the premises and terminate the liability under the purported lease at the end of the year.

Plaintiff, lessee, brought an action under the provisions of the Declaratory Judgments Act for a declaration by the court as to the rights of the parties under the lease. The claimed infirmity in that lease was a defect in the ac-

knowledgment. However, the trial court held that notwithstanding the apparent infirmity, the lease conformed to the provisions of §8510 GC. The defendant had filed a cross-petition in the case asking for reformation of the lease, and the court made the following comment by way of dictum in the case:

"If it were even necessary to hold the instrument ineffective as a lease, the lessors would be entitled to equitable relief under §§12210 and 12211 GC. The language of these curative statutes is not mandatory or permissive. It is the policy of some courts in equity to relieve mistakes and carry out the intenton of the parties by reformation. In the case at bar, that policy merits consideration."

In the Court of Appeals, the court held the lease to be defective and not in compliance with §8510 GC, but found, however, that the defectively executed lease was a valid contract to execute a lease for the same term and tenure. Thereupon the appellate court adjudged that the contract for a lease should be reformed in accordance with the undisputed evidence so that the certificates of acknowledgment would conform to the provisions of §8510 GC.

Upon appeal to the Supreme Court, the judgment of the Court of Appeals was affirmed. The court affirmed the case merely because the Court of Appeals arrived at the correct result upon the theory, however, that there was no defect therein, rather than upon the finding that the lease should be reformed.

In the second paragraph of the opinion, Judge Williams makes this pertinent observation which should be considered before the conclusion is reached that the

Supreme Court in that case rejected the remedy of reformation:

"The controlling inquiry, therefore, is as to whether the original acknowledgments were certified according to law. If these certificates comply with the statutes of Ohio, the lease is a valid and binding obligation, and there is no need to concern ourselves with the effect of the reacknowledgment; nor will it be necessary to consider defendants' alleged right to reformation except in determining the form of the judgment to be entered in this court."

In the concluding paragraph of the opinion, we find the following statement:

"It follows that the Court of Appeals was warranted in adjudging that the lease was executed and acknowledged according to law, and that the Court of Appeals erred in reaching the opposite conclusion and then adjudging a reformation on the undisputed fact.

"The judgment of each court, however, made the lease a binding and subsisting obligation between the parties since the parties were bound by the terms of the lease, in either event, no prejudice resulted to plaintiff for its reformation."

The Supreme Court on this occasion, as on several other occasions, pointed out in other decisions above referred to, failed to pass upon the question as to whether or not the lease could have been reformed had it found it to be defective, and, in fact, it was not necessary for the court to decide whether or not the lease could be reformed since it found the instrument to be valid as drawn.

Apparently, the decision of the Supreme Court is of no particular value in determining the question before us. The Court of Appeals decision, however, does stand, along with the cases of **Carlin Co. v Burroughs Bros. R. K. O. Distributing Corp. v Film Center Realty Co.**, and **S. S. Kresge Co. v B. D. K. Co.**, supra, in support of the proposition that equity under the curative statutes may reform a lease in an action by the lessor where there is a fatal defect in the same because of failure to observe the provisions of §8510 GC. In neither of these cases, so far as the reports show, were there any peculiarly superior qualities in favor of lessors.

Personally, it would seem to us that the curative statutes should be ample to justify a remedy in any case, which would conform the instrument to the manifest intention of the parties, if the court found that no fraud, in fact, had taken place in the execution of the lease. Such a rule would be consonant with justice and common sense. Why should a lessee be permitted to deny any remedy which would carry out his manifest intentions in executing the instrument? In the absence of any fraud or unfair advantage taken in the execution of the instrument, the lessee should not be permitted to use the provisions of §8510 GC, as a sword, when, in fact, the design and intention of the Legislature was to provide it as a shield. Unquestionably, the plaintiff would sustain a loss in income from the property in question should equitable relied be denied.

In the instant case, facts are not wanting to show equities in favor of the lessor. The evidence discloses that under the terms of the lease and in pursuance thereof, the building originally upon the premises was remodeled and changed by the lessee after taking posses-

sion. The evidence does not show whether the building as remodeled was of greater value to the lessor than it would have been in its original form, and it is apparent at any rate that the lessor can not be restored in statu quo. Furthermore, the length of time, which is about fifteen years, during which both of the parties performed the lease according to the terms and upon the theory that it was a perpetual lease, should, in our opinion, not be overlooked in determining whether the instrument should be reformed in the exercise of the discretion vested in the court by §12210 GC. Furthermore, it is a well known fact of which we may take judicial notice, that the period succeeding the year 1929 was characterized by depreciation of real estate values generally in this city and county. If, in the days of prosperity, plaintiff had the foresight to execute the lease upon such terms as would protect her in times of panic and financial adversity, it would seem that this consideration should be evaluated in determining the respective equities of the parties under all of the circumstances shown by the evidence.

Although in view of the state of confusion to be found in the decided cases in Ohio courts, we are not free from some doubt, under all the facts and circumstances disclosed by the evidence in this case, it is our best judgment that the instrument in question should be reformed by causing the several sheets thereof to be firmly fastened together by means of rivets which may not be removed without mutilation of the sheets of said lease, and it is so ordered. Upon reformation of said instrument, as indicated, we declare it to be a valid and binding lease, the same as if it had been legally executed in strict compliance with §8510 GC.

It is further ordered that each party pay his own costs incurred, and for the purpose of the record, the entry may show, if desired, the filing of a motion for a new trial and the overruling of the same.

Exceptions.